| | | |
|---|---|---|
| DEREK GUBALA, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 14 C 9039 |
| v. | ) ) | |
| CVS PHARMACY, INC., | ) ) | Judge Thomas M. Durkin |
| Defendant. | ) ) ) ) | |

## MEMORANDUM OPINION AND ORDER

Derek Gubala ("Plaintiff") alleges that CVS Pharmacy, Inc., ("CVS") deceptively labeled its protein powder product (the "Product") as "Whey Protein Powder" and included the misleading assertion that the Product contained "26 grams of high-quality protein per serving." R. 1 ¶¶ 18-19. Plaintiff brings four claims under state law: (1) a violation of various state consumer fraud acts on behalf of the multi-state class[1]; (2) a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("ICFA"), in the alternative to Count I; (3) unjust enrichment based on misrepresentation of the nature and quality of the Product on the label; and (4) breach of express warranty. R. 1 ¶¶ 50-

---

[1] Plaintiff's alleges violation of the following state consumer fraud acts: California (Cal. Bus. & Prof. Code § 17200, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Illinois (815 Ill. Comp. Stat. 502/1, *et seq.*); (Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. 010[sic], *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law § 349, *et seq.*); and Washington (Wash. Rev. Code § 19.86.010, *et seq.*). R. 1 at 12 ¶ 51 n. 9.

70. Currently before the Court is CVS's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(c), and 12(6). R. 16. For the following reasons, CVS's motion is granted.

## Legal Standard

For purposes of a motion to dismiss under either Rule 12(b)(1) or Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and construes all reasonable inferences in the plaintiff's favor. *See, e.g., Scanlan v. Eisenberg*, 669 F.3d 838, 841 (7th Cir. 2012); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). A Rule 12(b)(1) motion challenges federal jurisdiction, and the plaintiff bears the burden of establishing the elements necessary for jurisdiction, including standing, have been met. *Mutter v. Madigan*, 17 F. Supp. 3d 752, 756-57 (N.D. Ill. 2014) (citing *Scanlan*, 669 F.3d at 841-42). In ruling on a 12(b)(1) motion, the court may look outside of the complaint's allegations and consider whatever evidence has been submitted on the issue of jurisdiction. *Mutter*, 17 F. Supp. 3d at 756-57 (citing *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995)).

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A Rule 12(c) motion is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Lodholtz v. York Risk Servs. Group, Inc.*, 778 F.3d 635, 639 (7th Cir. 2015) (citing *Adams v. City of Indianapolis*, 742 F.3d 720, 727-28 (7th Cir. 2014)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

## Background

CVS is a Delaware corporation with its principal place of business in Rhode Island. R. 1 ¶ 4. CVS, directly and through its subsidiaries, sells a product labeled as "Whey Protein Powder" in Illinois and throughout the United States. *Id.* Below the name and flavor, the Product container's front label states "26 grams of high-quality protein per serving," "supports lean muscle & exercise recovery," and "quick

dissolving, easy to mix." R. 1 ¶ 17. An image of the front of the Product is
reproduced below[2]:



[2] Plaintiff attached a photo of the front of the Product to the complaint, R. 1 ¶ 17,
and Defendant also attached the image to its motion to dismiss. *See* R. 17 Ex. A.
The images appear to be identical and the Court includes the latter copy here for its
clearer resolution. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) ("a court
may consider, in addition to the allegations set forth in the complaint itself,
documents that are attached to the complaint, documents that are central to the
complaint and are referred to in it, and information that is properly subject to
judicial notice.").

R. 17 Ex. A. The Product's back label provides "Nutrition Facts" and a detailed list of ingredients, including specifics of the protein-amino acid blend used in the Product:[3]

[3] CVS attached an image of the back label to its motion to dismiss. R. 17 Ex. A. While Plaintiff does not explicitly refer to the back label in her complaint, the Court considers it to be central to her claim because the complaint alleges that a consumer should not have to look at the Product's back label and refers to the amino acid blend listed in the Nutrition Facts. *See* R. 1 ¶ 19 ("reasonable consumers should be able to trust that the representations on the front of Defendant's label are consistent with the ingredient list"); *id.* ¶ 27 (referring to protein-amino acid blend listed in the ingredients on the back label of the Product).

R. 17 Ex. A. Plaintiff purchased the Product for approximately $20.00 in July 2014 from a CVS Store in Bolingbrook, Illinois and contends that had he known the "true facts," about the whey protein content, he would not have purchased the Product. R. 1 ¶¶ 3, 62. In the Complaint, Plaintiff primarily alleges that he was deceived by the use of the phrases "Whey Protein Powder" and "26 grams of high-quality protein," on the product's front label into believing the 26 grams of protein were purely whey protein. R. 1 ¶¶ 22-26. Plaintiff takes issue with this labeling because CVS utilizes "protein-spiking" to increase the protein content of the product. *Id.* ¶ 11. According to Plaintiff's description, protein spiking involves adding "nitrogen-containing, cheap, and less beneficial free form amino acids and non-protein ingredients to the Product." *Id.* Because nitrogen is the "tag"[4] used in calculating protein content, adding these ingredients to the whey protein increases the protein content of the Product at a lower cost. *Id.* ¶ 12. Plaintiff alleges that due to the protein spiking, "consumers pay an inflated price for the Product, which delivers less actual protein than they reasonably expect." *Id.* ¶ 16. According to Plaintiff's analysis of the Product's contents, when the spiking agents are removed from analysis, the Product

---

[4] The parties do not define the term "tag," but suggest that it is essentially a marker for protein-content calculation. The briefing suggests that rather than calculating protein content on the actual number of "proteins" in a product, the FDA allows parties to calculate protein content based on the amount of nitrogen in the product, which is thus the "tag" in the calculation. By adding nitrogen-containing ingredients, a party can boost the calculated amount of protein in its product, even if those nitrogen-containing products are not actually proteins. *See* R. 1 ¶¶ 11-13; R. 26 at 2-3.

contains 21.8 grams of whey protein, versus the 26 grams of protein contained in the total product. *Id.* ¶ 13.

CVS argues that the Court should grant its motion to dismiss for the following reasons: (1) the Plaintiff's claims are preempted by the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 343-1(a) ("FDCA"), as amended by the National Labeling and Education Act, 21 U.S.C. § 341, *et seq.* ("NLEA"); (2) the Complaint should be stayed under the primary jurisdiction doctrine; (3) CVS is protected by the IFCA's safe-harbor provision specifically authorized by federal regulations; (4) Plaintiff fails to allege facts plausibly showing the Product label deceived consumers regarding the whey protein content; and (5) Plaintiff's allegations fail to state unjust enrichment and breach of express warranty claims. *See* R. 17.

## Discussion

### I.     Consumer Fraud Claims

#### A.     Preempted Claims

CVS argues that all of Plaintiff's claims are expressly preempted by the NLEA. R. 17 at 5. The NLEA established a regulatory scheme for food labeling and for regulating nutrient content claims on food labels. 21 U.S.C. § 341 *et seq.* The NLEA prohibits states from enacting "any requirement for nutrition labeling of food that is not identical to the requirement of section 343(q) of this title . . . [or] any requirement respecting any claim of the type described in section 343(r)(1) of this title, made in the label or labeling of food that is not identical to the requirement of section 343(r) of this title." 21 U.S.C. §§ 343-1(a)(4)-(5). Thus, through the NLEA

amendments, the FDCA expressly preempts any food labeling "requirements" that are not identical to those in sections 343(q) or 343(r).

The term "requirements" "sweeps broadly." *Turek v. Gen. Mills, Inc.*, 754 F. Supp. 2d 956, 958 (N.D. Ill. 2010) (citing *Cipollone v. Liggett Group Inc.*, 505 U.S. 504, 521 (1992)). States can impose a requirement that is identical to those imposed by the FDCA, but not different from or more burdensome than those requirements. *Chi. Faucet Shoppe, Inc. v. Nestle Waters North Am., Inc.*, 24 F. Supp. 3d 750, 758 (N.D. Ill. 2014). As the Seventh Circuit affirmed in *Turek*, "[i]t is easy to see why Congress would not want to allow states to impose disclosure requirements of their own on packaged food products, most of which are sold nationwide. Manufacturers might have to print 50 different labels, driving consumers who buy food products in more than one state crazy." 662 F.3d 423, 426 (7th Cir. 2011). States can, however, enforce identical requirements, and thus enforce a violation of the FDCA as a violation of state law, because the FDCA does not create a private right of action. *Turek*, 662 F.3d at 426.

The critical questions for this court to consider are (1) what requirements the NLEA imposes on the labeling of protein content; and (2) whether Plaintiff seeks to impose different or additional requirements on CVS. As discussed above, the NLEA forbids states from imposing "any requirement respecting any claim of the type described in section 343(r)(1) . . . made in the label or labeling of food that is not identical to the requirement of section 343(r)." 21 U.S.C. § 343-1(a)(5); *Turek*, 662 F.3d at 426. Section 343(r)(1)(A) governs any claim "made in the label or labeling of

the food which expressly or by implication characterizes the level of any nutrient which is of the type required by paragraph (q)(1) or (q)(2)." 21 U.S.C. § 343(r)(1)(A). Section (q)(1)(D) includes a requirement that the "label or labeling" of food products intended for human consumption state "the amount of . . . total protein contained in each serving size or other unit of measure." 21 U.S.C. § 343(q)(1). Additional protein labeling requirements are contained in the FDCA regulations, including 21 C.F.R. § 101.9(c)(7), which states in relevant part, "[p]rotein content may be calculated on the basis of the factor of 6.25 times the nitrogen content of the food as determined by the appropriate method of analysis as given in the 'Official Methods of Analysis of the AOAC International.'" Any additional Food and Drug Administration ("FDA") requirements relating to labeling that mention protein are incorporated in section 343(r)(1) as requirements to which any labeling disclosures required by a state must be identical. *Turek*, 662 F.3d at 427. Thus, the labeling of protein content falls within the statutes and regulations covered by NLEA express preemption. As a result, state requirements must be identical to such regulations.

Plaintiff's consumer fraud claims are based on the labelling of the Product. *See* R. 1 ¶ 21 ("A reasonable consumer, looking at Defendant's Product label, is misled because the claimed '26 grams of high quality protein per serving' is not calculated based on the protein's actual whey protein content, but rather not[sic] the nitrogen-containing free from amino acids and non-protein ingredients that Defendant has used to spike the Product."). However, Plaintiff asserts that he "has not alleged that the protein grams per serving appearing in the Product's Nutrition

Facts label is misleading, nor has [he] alleged that Defendant must calculate that figure using a different method." R. 26 at 9. In the complaint, Plaintiff primarily alleges that he was deceived by the use of the phrases "Whey Protein Powder" and "26 grams of high-quality protein" on the product's front label into believing the 26 grams of protein were derived solely from whey protein. R. 1 ¶¶ 29-30.

Plaintiff's claims would require defendants to label their products in a particular way. Remedying the allegedly deceptive labeling would require CVS to specifically identify each source of protein in the Product. The NLEA does not include such a labelling requirement. Under Section 343-1(a)(1), the standard for labeling protein does not require CVS to distinguish between sources of protein when listing total protein content. Requiring CVS to differentiate between whey protein and protein from amino acids when labeling the protein content of its product would not be identical to the labeling requirements imposed by federal law. Thus, such a requirement is barred. *Turek*, 662 F.3d at 427; *see also Chi. Faucet Shoppe*, 24 F. Supp. 3d at 758-59 (discussing preemption under the FDCA and noting that "state law cannot be used to fill what private litigants perceive to be gaps in the regulatory requirements imposed by federal law.").

Further supporting preemption of Plaintiff's claims is the fact that the FDA specifically considered and rejected a proposal to enforce stricter requirements for labeling products as "high" in protein or as "sources" of protein. Comments were submitted to the FDA "suggest[ing] that 'high' and 'source' claims for protein should be based on protein quality as well as level because such claims may be misleading

if a food contains a lower quality protein." *See* Food Labeling: Nutrient Content Claims, 58 Fed. Reg. 2302, 2344 (Jan. 6, 1993) (Comment 150). The FDA responded that "the agency believes that adding a second criterion based on the PDCAAS [Protein Digestibility Corrected Amino Acid Score] for 'high' and 'good source' in protein claims is not necessary." *Id.* Plaintiff would require CVS to distinguish between protein sources on products labeled as having "high quality" protein. The FDA has considered this issue and determined that labeling a product as high in protein or as a good source of protein is not misleading to consumers, irrespective of the source of the protein, so long as the protein content was properly calculated under FDA regulations.

The Seventh Circuit affirmed the dismissal of substantially similar claims in *Turek*, 662 F.3d at 425. The plaintiff in *Turek* brought a claim under the ICFA based on General Mills' description of fiber content in labeling its "chewy bars." *Id.* The labeling at issue included both (1) the statement on the Nutrition Facts panel that "a serving contains 9 grams of 'Dietary Fiber' and that this is 35 percent of one's 'Daily Value' of dietary fiber," and (2) the image on the front of the box where "a circle encloses the words '35% of your daily fiber.'" *Id.* The plaintiff claimed the statements were misleading because they did not include disclaimers that the principal fiber was from inulin,[5] which the plaintiff characterized as "non-natural"

_____

[5] "Inulin is a starchy substance found in a wide variety of fruits, vegetables, and herbs, including wheat, onions, bananas, leeks, artichokes, and asparagus. The inulin that is used for medicine is most commonly obtained by soaking chicory roots in hot water." *See* www.WebMd.com.

and less beneficial than natural sources of fiber. *Id.* at 426. The plaintiff did not allege that the labelling violated the NLEA requirements or failed to disclose the presence of chicory root extract inulin, but took issue with the quality of the fiber and the defendant's failure to differentiate between natural and non-natural sources on the label. *Id.*; *see also Turek,* 754 F. Supp. 2d 956. The Seventh Circuit upheld the district court's dismissal of the ICFA claim as preempted by the NLEA. *Turek,* 662 F.3d at 427.

Plaintiff's claims are not distinguishable from those in *Turek* on any meaningful basis. Plaintiff here concedes that the calculation of protein content was proper, but takes issue with the fact that some protein ingredients are not as beneficial as whey protein. R. 26 at 10 ("[w]hile Defendant is not legally obligated to calculate the protein content per serving appearing in the Nutrition Facts label in a different manner, it *is* legally obligated to refrain from deceptively marketing the whey protein content of the Product elsewhere on the label") (emphasis in original). In *Turek*, the plaintiff claimed that fiber from inulin was not as beneficial as naturally occurring fiber. As CVS asserts, "Plaintiff here is advancing the same argument that was preempted in *Turek*: the label is misleading because it does not differentiate the quality of the ingredients that make up the calculation." R. 29 at 5. Thus, like the claims in *Turek*, Plaintiff's claims are preempted.

In an attempt to avoid the implications of *Turek*, Plaintiff tries to distinguish his case by arguing that his claims only concern the front of the label, which cannot be preempted, while the claim in *Turek* only concerned information appearing on

the box's Nutrition Facts label on the back of the Product. R. 26 at 7-10, 12. For example, he refers to the whey protein content claims on the front of the label as appearing on "non-preempted portions of the label" and states the Nutrition Facts label is "the *only* aspect of the label that could be subject to preemption" under the FDCA. R. 26 at 1, 7-10, 12 (emphasis in original). Plaintiff provides no legal support for the assertion that because his claim does not involve the Nutrition Facts label, it cannot be preempted. *See id*. His argument that the front of the label is a "non-preempted" portion of the label is simply not tenable. In *Turek*, the court specifically addressed the front label of the fiber bar box in describing the plaintiff's arguments and in analyzing whether the claims were preempted. Plaintiff fails to recognize that point. The district court opinion for *Turek*, which was substantially upheld by the Seventh Circuit, states:

> Plaintiff argues that the NLEA does not govern front-of-package labeling and so the NLEA could not preempt plaintiff's claims against defendants for labeling their products as containing "fiber" on the fronts of packages. The NLEA, however, contains no such distinction. The term "labeling" encompasses "all labels and other written, printed or graphic matter . . . accompanying such article." 21 U.S.C. § 321(m).

*Turek*, 754 F. Supp. at 960. The Court agrees that there is no support in the language of the statute or regulations for the position that preemption is somehow limited to the Nutrition Facts label. To the contrary, labeling specifically encompasses all written matter accompanying a product. *Id*. The distinction between marketing materials and labeling "is both illusory and irrelevant. It is illusory because labeling *is* marketing." *Chi. Faucet Shoppe*, 24 F. Supp. 3d at 758

(emphasis in original). Thus, the NLEA applies to statements made on the front of the package as well as on the nutrition facts label on the back of the package. As a result, to the extent Plaintiff's consumer fraud claim is based on the argument that CVS has misrepresented the amount of purely whey protein in the Product, his claims are dismissed.

### B. Non-Preempted Claim

Arguably, one of Plaintiff's contentions about CVS's labelling is not preempted because it seeks to enforce a requirement that is identical to those imposed by the FDCA. *Turek*, 662 F.3d at 426. Though Plaintiff does not elaborate on the argument, he alleges that CVS's Product label is misleading in that it includes one Product ingredient and not other notable ingredients. The FDA has recognized that such product names may mislead consumers, stating "[t]he labeling of food which contains two or more ingredients may be misleading by reason (among other reasons) of the designation of such food in such labeling by a name which includes or suggests the name of one or more but not all such ingredients, even though the names of all such ingredients are stated elsewhere in the labeling." 21 C.F.R. § 101.18(b). Plaintiff argues that it is misleading to use the name "Whey Protein Powder" to describe a product that has been "adulterated with substantial amounts of free form amino acids and non-protein ingredients." R. 26 at 11.

In response, CVS notes that Plaintiff refuses to acknowledge the presence of the words "Naturally and Artificially Flavored Drink Mix" on the Product label and continuously claims that the "26 grams of high-quality protein" appears directly

below the name "Whey Protein Powder," despite two statements between the two phrases.

Plaintiff argues that a determination of whether the placement of the above-described Product information is misleading to consumers under the ICFA is a question of fact. [6] However, "[a]lthough ICFA claims often involve disputed questions of fact not suitable to a motion to dismiss, a court may dismiss the complaint if the challenged statement was not misleading as a matter of law." *Ibarrola v. Kind, LLC*, No. 13 C 50377, 2015 WL 1188498, at *3 (N.D. Ill. Mar. 12, 2015) (dismissing fraud claims against Kind products (citing *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 940 (7th Cir. 2001))). As the Seventh Circuit has directed, "in determining whether the allegations in [the] complaint state [an ICFA] claim for relief that satisfies the requirements of Rule 12(b)(6)," the court must "ask whether the allegedly false and misleading statements on which [the plaintiff] base[s] his [ICFA] claim can be read to create a likelihood of deception or to have the capacity to deceive." *Bober*, 246 F.3d at 938.

The label plainly shows that Plaintiff's allegations mischaracterize the label. While the wording "Whey Protein Powder" is in larger text than the other words on the front label, the word "Vanilla" is also prominent and clearly displayed directly

---

[6] To state an ICFA claim, a plaintiff must allege: "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Muir v. Playtex Products, LLC*, 983 F. Supp. 2d 980, 987 (N.D. Ill. 2013) (citations omitted)).

below the name. The words "Naturally & Artificially Flavored Drink Mix," while smaller than the above two label items, are still clearly visible and prominently placed as part of the Product description on the front of the container below the other two descriptions. R. 17 Ex. A. The Product does not list the whey protein ingredient while "excluding others"; it is clearly also labeled as being vanilla-flavored and containing additional natural and artificial ingredients. These statements make it clear to any consumer upon first glance that the Product is not *pure* whey protein, and thus the label does not create a likelihood of deception or have the capacity to deceive based on the identifying name of "whey protein powder." Plaintiff's failure to address these points in his response brief is telling.

Plaintiff cites to a number of cases to support his argument that the use of "whey protein" without listing other ingredients in the Product name is misleading to consumers. R. 26 at 11-12. For instance, in *Ackerman v. Coca-Cola Co*, the product, "Vitaminwater," used a product name that referenced vitamins and water, but omitted the fact that there was a key, unnamed, ingredient—sugar. No. CV 09-0395, 2010 WL 2925955, at *12-13 (E.D.N.Y. July 21, 2010). The labeling for Vitaminwater repeatedly stated that the product contained only vitamins and water, while failing to mention that it also contained sugar. *Id.* at *12-13. The court also noted that the potential for confusion based on the product name was "heightened by the presence of other statements" on the product labeling, such as "vitamins + water = all you need," which had the potential to "reinforce a

consumer's mistaken belief that the product is comprised of only vitamins and water." *Id.* at *13.

*Ackerman* is distinguishable from this case. Here, the Product label clearly mentions its artificial flavors and vanilla flavor in addition to the whey protein. Plaintiff fails to address or acknowledge those additional portions of the Product name. As a result, the Court finds as a matter of law, the Product name of "Whey Protein Powder" was not likely to deceive a consumer or have the capacity to deceive, and Plaintiff's claim must fail.

## II. Plaintiff's Remaining Counts of Unjust Enrichment and Breach of Express Warranty

### A. Breach of Express Warranty

In his claim for breach of express warranty, Plaintiff contends that he formed a contract with CVS when he purchased the Product with terms including promises and affirmations of fact described in the complaint. Specifically, Plaintiff argues that "through its advertising, labeling, marketing and packaging," CVS purports to "create an express warranty that the Product contained '26 Grams of high quality protein per serving.'" R. 1 ¶ 66. According to Plaintiff, CVS breached the warranty because its statement about the product was false and did not conform with his beliefs, Plaintiff would not have bought the Product had he known the true nature of its ingredients, and he suffered damages in the amount of the purchase price as a result. R. 1 ¶¶ 68-69.

To state a claim for breach of express warranty in Illinois, a plaintiff "must allege that (1) the seller made an affirmation of fact or promise; (2) relating to the

goods; (3) which was part of the basis for the bargain; and (4) seller guaranteed that the goods would conform to the affirmation or promise." *Baldwin v. Star Scientific, Inc.*, No. 14 C 588, 2015 WL 170407, at *11 (N.D. Ill. Jan. 13, 2015). Further, in general, "a plaintiff must state the terms of the warranty or attach it to the complaint." *Id.* CVS argues that the complaint fails to plead facts sufficient to demonstrate that any alleged false statements in the Product's label were "part of the basis of the bargain" as it does not state why Plaintiff purchased the Product and how he was supposedly deceived. R. 17 at 14-15; R. 29 at 13-15.

The Court finds that Plaintiff's breach of express warranty claim "that the Product 'contained 26 Grams of high quality protein per serving,'" as plead, fails for a different reason: because "assertions to customers that their products are of high quality . . . are viewed as 'puffing,' rather than express warranties." *Pressalite Corp. v. Matsushita Elec. Corp. of Am.*, No. 02 C 7086, 2003 WL 1811530, at *3 (N.D. Ill. Apr. 4, 2003) (citing *Olin Mathieson Chemical Corp. v. Moushon*, 235 N.E.2d 263, 264 (Ill. App. Ct. 4th Dist. 1968) (plaintiff's oral statements to defendant that his product was of good quality, good results would be obtained and the customer would be pleased were statements of the seller's opinion rather than an express warranty)); *see also Ibarolla v. Nutrex Research, Inc.,* No. 12 C 4848, 2012 WL 5381236, at *7 (N.D. Ill. Oct. 31, 2012) (finding statement in promotional materials could not be the basis of an express warranty where it was "not a factual statement about an objective characteristic or capacity of the product."); *MacNeil Auto. Prods., Ltd.*, 715 F. Supp. 2d 786, 794 (N.D. Ill. 2010) (distinguishing between general

allegations of a product's high quality, which are not warranties, and specific factual representations about a product's characteristics, which are warranties); *Accurate Transmissions, Inc. v. Sonnax Indus., Inc.*, No. 04 C 7441, 2007 WL 1773195, at *5 (N.D. Ill. June 14, 2007) ("Statements that boast unverifiably of the quality of a product constitute puffing and will not create express warranties.") (citing *Avery v. State Farm Mut. Auto, Ins. Co.*, 835 N.E.2d 801, 846 (2005)). Because Plaintiff's express warranty claim that the Product "contained '26 Grams of high quality protein per serving'" relies on opinion language viewed as "puffing," it fails and the claim is dismissed.

### B.    Unjust Enrichment

Plaintiff's unjust enrichment claim relies on the assertion that the Product labeling was somehow misleading or deceptive or contained false statements. An unjust enrichment claim cannot stand where facts underlying the claim are the same fraudulent omissions and misrepresentations that support a "largely preempted and otherwise . . . insufficiently pleaded" ICFA claim. *Chicago Faucet Shoppe*, 24 F. Supp. 3d at 765 (citing *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517–18 (7th Cir. 2011)). Since the Court has held that Plaintiff's ICFA claims are preempted or fail to state a claim, the unjust enrichment claim fails as well. *See id.*; *see also Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted) ("[a] claim of unjust enrichment is not a separate cause of action that, standing alone, will justify an action for recovery.")

## Conclusion

Because Plaintiff's consumer fraud claims are expressly preempted by the NLEA and fail to state a claim, it is unnecessary to address CVS's additional defense of the primary jurisdiction doctrine at this time. In the event Plaintiff is able to amend his complaint in such a way that it avoids preemption, the Court will consider CVS's additional defenses if and when they are raised. For the foregoing reasons, CVS's Motion to Dismiss is granted and the complaint is dismissed without prejudice. Plaintiff is allowed until July 16, 2015 to file an amended complaint. The Court notes that Plaintiff filed other non-Illinois state law claims on behalf of a class of consumers. R. 1. Those claims are dismissed without prejudice, as well. *See, e.g., Wiesmueller v. Kosobucki,* 513 F.3d 784, 786 (7th Cir. 2008) ("If . . . the named plaintiff's claim becomes moot before the class is certified, the suit must be dismissed because no one besides the plaintiff has a legally protected interest in the litigation"). However, the Court will allow amendment of the complaint by July 16, 2015 to include a named plaintiff who can prosecute those claims. *See, e.g., Phillips v. Ford Motor Co.,* 435 F.3d 785, 787 (7th Cir. 2006) ("[S]ubstitution for the named plaintiffs is allowed," because courts "disregard the jurisdictional void that is created when the named plaintiffs' claims are dismissed and, shortly afterwards, surrogates step forward to replace the named plaintiffs").

ENTERED:

*Thomas M Durkin*

Thomas M. Durkin
United States District Judge

Dated: June 16, 2015