**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DEREK GUBALA, individually and on behalf of all others similarly situated, | ) ) ) | Case No. 14-cv-9039 |
| Plaintiff, | ) ) | Judge Thomas M. Durkin |
| v. | ) ) | Magistrate Judge Daniel G. Martin |
| CVS PHARMACY, INC., | ) ) | |
| Defendant. | ) | |

**<u>PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT</u>**

**Submitted By:**
Sharon S. Almonrode
THE MILLER LAW FIRM, P.C.
950 West University Drive, Suite 300
Rochester, MI 48307
Ph: (248) 841-2200
Fax: (248) 652-2852
ssa@millerlawpc.com

Nick Suciu III
BARBAT, MANSOUR & SUCIU PLLC
434 West Alexandrine #101
Detroit, MI 48201
Ph: (313) 303-3472
Fax: (248) 698-8634
nicksuciu@bmslawyers.com

Joseph J. Siprut
Michael L. Silverman
SIPRUT PC
17 N. State Street, Suite 1600
Chicago, IL 60602
Ph: (312) 236-0000
Fax: (312) 878-1342
jsiprut@siprut.com
msilverman@siprut.com

*Attorneys for Plaintiff and the Putative Class*

## INTRODUCTION

The Court dismissed Plaintiff's original complaint as preempted, because "[r]equiring CVS to differentiate between whey protein and protein from amino acids when labeling the protein content of its product would not be identical to the labeling requirements imposed by federal law." ECF #32 at 10. The Court also held Plaintiff may be able to "amend his complaint in such a way that it avoids preemption," and granted him leave to do so. *Id.* at 20.

As amended, the complaint alleges the same underlying wrongful conduct: CVS spikes its protein supplement product, CVS WHEY PROTEIN POWDER, with cheap non-protein fillers and passes them off as protein to its consumers, who pay a premium price for a misbranded product that fails to deliver as advertised. As amended, the complaint also clarifies and avoids preemption: Plaintiff alleges that CVS's claim of "26 grams of protein per serving" (or "52% DV protein") is *false*. When a protein content claim is made on the front of a food label (here "26 grams of high-quality protein per serving"), the protein content **must** be calculated using the Protein Digestibility Amino Acid Corrected Score (PDCAAS) method. 21 C.F.R. §§ 101.9(c)(7)(i)-(ii). CVS admits that it did not calculate the product's protein content using this method. Instead, CVS argues that its violation is irrelevant because the protein in the product is a Class II nutrient and thus CVS is permitted to overstate protein content by 20%. This is patently untrue. First, the PDCAAS testing is mandatory. Second, the product is not a Class II nutrient. *See* 21 C.F.R. § 101.9(g)(3); Pl.'s Brief at 7-8, *infra*. Third, Plaintiff's third-party testing, which properly excluded non-protein fillers from total calculated protein content, determined the Product provides at most 21.8 grams of protein per serving. Fourth, if CVS had properly tested the product using PDCAAS method, the product's calculated protein content would have been lower as it would not have included non-protein fillers.

CVS justifies its failure to comply with federal law regarding the calculation and declaration of protein content by arguing that "none of this matters." Def.'s Brief at 7. CVS also tries to distract

from its own improper testing by impugning Plaintiff's testing as based on an insufficient number of product samples. Again, CVS's assertion lacks merit. At this pleading stage, Plaintiff is only required to state a plausible claim, and he is not required to prove that CVS did not comply with the FDCA. Further, the sampling requirement asserted by CVS is not even a *requirement* for testing by anyone except the FDA; the FDA utilizes this sampling method for compliance and enforcement purposes. 21 C.F.R. § 101.9(g)(2)

CVS has the burden of establishing preemption, yet it offers *no* evidence contradicting Plaintiff's allegations that the label for CVS WHEY PROTEIN POWDER falsely and misleadingly represents the product's protein and amino acid content, in violation of unambiguous federal regulations that dictate how a food is to be named, how ingredients are identified, and how nutrition information is calculated and presented on food labels. CVS's preemption arguments fail, and its additional arguments for dismissing or staying the complaint also lack merit, as explained herein.

## **BACKGROUND**

This putative class action arises out of Defendant CVS's labeling of its protein supplement product CVS WHEY PROTEIN POWDER (the "Product"). Plaintiff alleges the Product's label ("Label") is false and misleading in violation of the federal Food, Drug, and Cosmetic Act and its implementing regulations (together the "FDCA") and the Illinois Consumer Fraud Act ("ICFA"), and that CVS should also be liable for unjust enrichment and breach of express warranty.

Relevant to this case is how CVS manufactures CVS WHEY PROTEIN POWDER and determines its protein content for labeling purposes. *See* ECF #33 ("Complaint") ¶¶ 10-17. CVS (improperly) calculates protein content using a method that measures only the nitrogen in a food, and CVS manipulates that calculation by adding nitrogen-containing, *non-protein* ingredients to its Product, a practice commonly referred to as "protein spiking." ¶¶ 13-14, 17. These added "spiking" ingredients, which include the free form amino acids Asparagine and Hydroxyproline and other non-

2

protein ingredients such as Creatine Monohydrate, are not absorbed like whey protein and are no more than cheap imitation ingredients. ¶¶ 13-14, 25 n.5. By engaging in "protein spiking," CVS reduces its manufacturing costs and artificially inflates the Product's calculated protein content at the expense of its consumers, who pay a premium price for a misbranded product that fails to deliver as advertised. ¶¶ 10-17.

The amended Complaint alleges CVS violated the FDCA and ICFA based on the following:

- The Product's stated protein content, expressed on the Label as grams per serving and percent daily value, was not calculated using the Protein Digestibility Amino Acid Corrected Score ("PDCAAS") method, which is not susceptible to manipulation through "protein spiking" because it measures more than just the nitrogen in a food, and which provides consumers a superior measure of a product's protein quality, in violation of 21 C.F.R. §§ 101.9(c)(7)(i)-(ii) (¶¶ 18-22, 41-53);

- Further, Plaintiff's independent testing indicates the Product actually provides, at most, 21.8 grams of protein per serving (or 43.6% DV protein) – not 26 grams per serving and 52% DV as claimed on the nutrition label, and certainly not 26 grams of "high-quality" protein per serving as claimed on the principal display panel (¶ 47);

- The Label fails to declare two free form amino acids, Asparagine and Hydroxyproline, which are "spiking ingredients" that CVS adds to the Product to artificially inflate its calculated protein content, in violation of 21 C.F.R. §§ 101.4(a)(1), (b)(2)(i)-(ii) (¶¶ 10-17, 27-30, 39);

- The Label falsely claims the Product provides Glutamine and the Branched Chain Amino Acids ("BCAAs") L-Leucine, L-Isoleucine, and L-Valine, which (unlike Asparagine and Hydroxyproline) enhance the Product's quality and value to consumers, in violation of 21 C.F.R. §§ 101.4(a)(1), (b)(2)(i)-(ii) (¶¶ 28, 31-34);

- The Label does not state the amounts of each of the free form amino acids it declares to be present in the Product, in violation of 21 C.F.R. § 172.320(e)(2) (¶¶ 38, 40);

- CVS adds Asparagine and Hydroxyproline to the Product for the sole purpose of "protein spiking," not to improve the biological quality of the total protein in the Product, in violation of 21 C.F.R. § 172.320(c) (¶39);

- The Product's name, CVS WHEY PROTEIN POWDER, implies that the Product does not contain substantial amounts of "spiking ingredients" in the form of free form amino acids and other-non protein ingredients, in violation 21 C.F.R. §§ 101.3(b)(3), 101.18(b) (¶¶ 54-61); and

3

- Given the above, the Label is "false or misleading in any particular," in violation of 21 U.S.C. § 343(a)(1) (¶63).

The Court dismissed Plaintiff's original complaint without prejudice and granted leave to amend the complaint "in such a way that it avoids preemption[.]" ECF #32 ("Opinion") at 20.

## LEGAL STANDARDS

CVS moves to dismiss the Complaint based on federal preemption (Fed. R. Civ. P. 12(b)(1)) and failure to state a claim (12(b)(6)), and to stay the action based on the primary jurisdiction doctrine (12(c)). ECF #41 ("Motion"). Plaintiff and CVS agree that the pleading standards set forth in the Court's previous Opinion apply here, *see* ECF #32 at 2-3, however Plaintiff notes that "[f]ederal preemption is treated as an affirmative defense, and Defendants bear the burden of proving preemption." *Jamison v. Summer Infant (USA), Inc.*, 778 F. Supp. 2d 900, 907 (N.D. Ill. 2011) (citing *Russian Media Grp., LLC v. Cable Am., Inc.,* 598 F.3d 302, 309 (7th Cir. 2010)).

## ARGUMENT

### I. Plaintiff's Claims are Premised on Violations of Federal Food Labeling Requirements and are Therefore Not Preempted

The FDCA provides significant protections to consumers with regard to food labeling, and it does so in two ways. First, implementing regulations ensure the truthfulness and accuracy of food labels by dictating, *inter alia*, how a food is named, how ingredients are identified, and how nutrition information is calculated and presented to consumers. *See* 21 C.F.R. §§ 101.3, 101.4, 101.9. Second, the Act's "catch-all" provision broadly prohibits food labeling that is "false or misleading in any particular." 21 U.S.C. § 343(a)(1). A food is "misbranded" if its label violates either a specific labeling requirement or the general prohibition against false or misleading food labeling. *Id.* § 343. Like other states, Illinois has made violations of federal food labeling law actionable under state law. *See* 410 ILCS 620/21(j) (providing automatic incorporation of federal food labeling regulations).

4

A state law claim based on false and misleading food labeling is only preempted if it would impose a labeling requirement that is "not identical to" one of the federal requirements given preemptive effect. 21 U.S.C. § 343-1. As the Court previously held, "States can impose a requirement that is identical to those imposed by the FDCA, but not different from or more burdensome than those requirements. … States can[] thus enforce a violation of the FDCA as a violation of state law, because the FDCA does not create a private right of action." ECF #32 at 8 (citing *Chicago Faucet Shoppe, Inc. v. Nestle Waters N. Am. Inc.*, 24 F. Supp. 3d 750, 758 (N.D. Ill. 2014), *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011)).

CVS bears the burden of proving preemption, *Jamison*, 778 F. Supp. 2d at 907, and the Court should "accept the reading [of the Act] that disfavors pre-emption." *Altria Grp., Inc. v. Good*, 555 U.S. 70, 77 (2008) (quoting *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005)). *See also Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (The presumption against FDCA preemption "is consistent with both federalism concerns and the historic primacy of state regulation of matters of health and safety."). Here, Plaintiff's claims are premised on CVS's violations of federal food labeling law and would impose no different labeling requirements, and federal law neither authorizes nor requires the challenged labeling conduct. As such, Plaintiff's claims are not preempted.

**A. CVS's protein content claims are false and misleading.**

CVS claims the Product provides 26 grams of protein per serving both on the principal display panel (the consumer-facing part of the Label) and the nutrition label (back side of Label). *See* ¶¶ 33, 49 (photocopies of Label). Because CVS makes a protein content claim on the front of the Label, it was required to calculate the Product's protein content using a more sophisticated form of

testing, the "PDCAAS method," and its failure to do so constitutes an independent violation of federal law.[1]

More importantly, if CVS *had* used the required PDCAAS method, its calculation of protein content would have excluded non-protein filler ingredients containing nitrogen (the "spiking" ingredients). ¶¶ 44-48. Instead, in violation of the mandatory requirement, CVS counted all of the nitrogen-containing, non-protein "spiking" ingredients as actual protein, and thus improperly produced an inflated protein content figure. This is why the FDA recently stated that its "expectation for proper nutrition labeling is that firms will evaluate the protein content from actual protein sources—not other nitrogen-containing ingredients such as individual amino acids—and label the products consistent with the results of such evaluations."[2]

Plaintiff's third-party testing, which did account for the "spiking" ingredients (¶ 47), determined that the Product provides, at most, 21.8 grams of actual protein per serving (or 43.6% DV) – not 26 grams per serving and 52% DV as claimed on the nutrition label, and not "26 grams of high-quality protein per serving" as claimed on the principal display panel.[3] The Label therefore violates 21 U.S.C. § 343(q)(1)(D) and 21 C.F.R. § 101.9(c)(7), which require accurate statements of protein content calculated in the manner provided by law.

---

[1] *See* 21 C.F.R. § 101.13(c) (If protein grams per serving is declared outside nutrition label, "such information … is a nutrient content claim and is subject to the requirements for nutrient content claims"); 21 C.F.R. § 101.9(c)(7)(i) ("A statement of the corrected amount of protein per serving, as determined in paragraph (c)(7)(ii) of this section [and] expressed as Percent of Daily Value, may be placed on the label, except that such a statement shall be given if a protein claim is made for the product[.]"); *id.* § 101.9(c)(7)(ii) ("The 'corrected amount of protein (gram) per serving' … is equal to the actual amount of protein (gram) per serving multiplied by the amino acid score corrected for protein digestibility.").

[2] Morrell A., *Lawsuits Say Protein Powders Lack Protein, Ripping Off Athletes*, Forbes (March 12, 2015), *available at* www.forbes.com/sites/alexmorrell/2015/03/12/lawsuits-say-protein-powders-lack-protein-ripping-off-athletes/.

[3] CVS's preemption argument regarding this challenged aspect of the label, *see* Motion Part IV(A)(4), misses the point: The Complaint alleges that CVS *cannot claim* "26 grams of protein per serving" or "52% DV protein" on the Label under federal law.

1. **The safe harbor provision claimed by CVS applies to protein natural foods which vary in nutrient composition, not highly processed and specifically formulated dietary supplements like CVS WHEY PROTEIN POWDER.**

Plaintiff has stated plausible claims based on the Label's false statements of protein content. In fact, CVS does not even argue that its method of protein content calculation complied with federal law, nor does it contend that the Label's statements of protein content are even accurate. Instead, CVS argues "none of this matters" because the protein in the Product is a "naturally-occurring" Class II nutrient and qualifies for the "safe harbor" provision of 21 C.F.R. § 101.9(g)(4)(ii), which CVS claims allows it to overstate the Product's protein content by up to 20%. This is simply wrong. The Product is a highly processed powder that is formulated to achieve specific protein levels, ¶¶ 13-16, 24, and the protein in the Product is "[a]dded…in [a] fortified or fabricated food[,]" which makes it a Class I nutrient – not a "naturally occurring" Class II nutrient. 21 C.F.R. § 101.9(g)(3)(i).[4]

Indeed, the safe harbor provision claimed by CVS applies to natural foods which may have some variance in protein composition, not manufactured foods like the Product.[5] Moreover, CVS offers *zero* support for its assertion that the Product's protein is a Class II nutrient, and as such, CVS falls far short of establishing its entitlement to the safe harbor. *See Clay v. Cytosport, Inc.,* No. 15-CV-165 L DHB, 2015 WL 5007884, at *4 (defendant in protein supplement case failed to establish

---

[4] *See also* ¶ 33 (the Product's primary ingredient is a "protein-amino acid blend" containing whey protein concentrate, whey protein isolate, partially hydrolyzed whey protein and other sub-ingredients); Naclerio F. *et al.*, *Effectiveness of Whey Protein Supplement in Resistance Trained Individuals,* J. Sports Med. Doping Stud. (2013), at 2, *available at* www.omicsonline.org/ArchiveJSMDS/jsmds-archive.php?month= December&&year=2013 (whey protein concentrate production involves "coagulation of milk with the enzyme rennet or acid," "further ultrafiltration and drying," and "additional processing;" that "ion exchange chromatography" [is] the process most often used to produce whey protein isolates;" and that protein hydrolysis "lower[s] the quality and biological value of protein").

[5] *See Clay v. Cytosport, Inc.,* No. 15-CV-165 L DHB, 2015 WL 5007884, at *3 (S.D. Cal. Aug. 19, 2015) (comparing "foods with naturally occurring nutrients" with "foods where a nutrient is not naturally occurring, but instead [is] added to the food"); *CreAgri, Inc. v. USANA Health Sciences, Inc.,* 474 F.3d 626, 631 (9th Cir. 2007) ("Although hydroxytyrosol may naturally be found *in olives,* it is not naturally found *in Olivenol,* but rather is added … pursuant to a patented [manufacturing] method.").

entitlement to safe harbor); *Mee v. I A Nutrition, Inc.*, No. C-14-5006 MMC, 2015 WL 4776301, at *9 (N.D. Cal. Aug. 13, 2015) (same). For these reasons, CVS's arguments that are based on the protein in the Product being a Class II nutrient, *see* Motion at 7-8 (preemption) and 14 (breach of express warranty), fail. The protein in the Product is a Class I nutrient, therefore the Product's protein content must be accurately stated on the Label. 21 C.F.R. §§ 101.9(g)(3)(i), 101.9(g)(4)(i).

### 2. Plaintiff's testing method is irrelevant.

Plaintiff was not required to use the 12 sample testing method in 21 C.F.R. § 101.9(g)(2) in determining the Product's protein *or* amino acid content, nor was he required to allege compliance with that method. At this pleading stage, Plaintiff is only required to state a plausible claim, and he is not required to prove that Defendant did not comply with the FDCA.[6]

This entire argument is a red herring. CVS admits that it did not perform the required PDCAAS test, and its Label declares ingredients that would not be counted as "protein" with PDCAAS testing. So, the Product's protein grams per serving, if properly measured without the "spiking" ingredients, would be less than 26 grams per serving. We do not need Plaintiff's testing to reach this conclusion. Hence, the number of samples Plaintiff tested is not relevant.

The sampling requirement asserted by CVS is not a requirement at all: it is to be employed by the FDA for compliance and enforcement purposes. 21 C.F.R. § 101.9(g). Even CVS – the Product manufacturer/distributor – is not required to test any minimum number of samples to ensure its compliance with nutrition labeling law. *See Guidance for Industry: A Food Labeling Guide*, FDA (revised Jan. 2013), at 31, *available at* www.fda.gov/Food/GuidanceRegulation/GuidanceDocu

---

[6] The absurdity of CVS's argument is clear: Plaintiff does not have access to CVS facilities, and he is neither expected nor required to test 12 product samples from 12 randomly chosen shipping cases in order to state a claim. Rather, Plaintiff need only plead sufficient facts allowing the Court to infer that CVS unlawfully overstates the product's protein content.

mentsRegulatoryInformation/LabelingNutrition/default.htm ("FDA has not defined the number of samples that must be analyzed…")

The Complaint alleges the Label's protein content claims are necessarily false and misleading based on *CVS's* improper testing, which did not account for the nitrogen-containing, non-protein "spiking" ingredients CVS adds to the Product. Plaintiff's testing, which indicates the Label's protein content claims are *in fact* false, simply makes the alleged violations even more plausible. *See Clay v. Cytosport, Inc.*, No. 15-CV-165 L DHB, 2015 WL 5007884, at *1-4 (S.D. Cal. Aug. 19, 2015) (holding plaintiffs' allegations that defendant misrepresented the composition of its protein supplements, supported by third-party testing, were sufficient to state a plausible claim, and further, that "[defendant's] argument is not appropriate for a motion to dismiss" because "to ultimately prevail on these claims, Plaintiffs will have to prove that *Defendant* did not comply with the FDCA") (emphasis added).

Practically speaking, to hold that a consumer is required to follow the sampling method to survive a preemption challenge would allow manufacturers to make deceptive labeling claims with impunity, because unlike defendant companies and the FDA, consumers do not have the requisite access to collect "12 subsamples … taken 1 from each of *12 different randomly chosen shipping cases*" for testing. 21 C.F.R. § 101.9(g)(2) (emphasis added).

CVS has the burden of establishing preemption, yet it offers *no* evidence contradicting Plaintiff's allegations that the Label's statements of protein content are false and violate unambiguous federal regulations that protect CVS's consumers by ensuring the truthfulness and accuracy of food labeling. For all of these reasons, CVS's preemption argument fails.

**B. CVS adds prohibited "spiking" ingredients to the Product and misrepresents the Product's amino acid composition in several respects.**

9

Asparagine and Hydroxyproline are nonessential amino acids and therefore do not improve the quality of the protein in the Product.[7] However, CVS illegally adds these "spiking" ingredients solely to artificially inflate the Product's calculated protein content. *See* 21 C.F.R. § 172.320(c) (amino acids may be used as nutrients added to foods only if they "significantly improve the biological quality of the total protein in a food containing naturally occurring primarily intact protein that is considered a significant dietary protein source"). Further, CVS does not disclose that the Product contains Asparagine and Hydroxyproline, and does not state the amounts of each in the Product, also in violation of federal law. *See id.* §§ 101.4(b)(2)(i)-(ii); *id.* § 172.320(e)(2) (requiring statements of "amounts of each amino acid contained in any mixture" to "assure the safe use of the additive"). And, the Label falsely claims the Product provides Glutamine and the BCAAs L-Leucine, L-Isoleucine, and L-Valine, which (unlike Asparagine and Hydroxyproline) enhance the Product's quality and value to consumers, in violation of federal law. *See id.* §§ 101.4(a)(1), (b)(2)(i)-(ii). Further, CVS's suggestion that these claims are preempted because Plaintiff did not allege he tested 12 Product samples from 12 shipping cases, *see* Motion at 6, entirely lacks merit, as the section relied on by CVS does not regulate amino acid declarations. *See* 21 C.F.R. § 101.9(g).

CVS apparently misunderstands the Complaint. Plaintiff agrees that CVS may choose to label the Product as a "food" rather than a "dietary supplement," which by definition is a product that "is labeled as a dietary supplement."[8] What matters is that CVS *admittedly chose* to label the Product as a food, *see* Motion at 8-9, and is therefore bound by the above provisions. Such claims

---

[7] ¶ 39. *See also* AMINO ACIDS, U.S. National Library of Medicine Medical Encyclopedia (updated Feb. 18, 2013), *available at* www.nlm.nih.gov/medlineplus/ency/article/002222.htm (essential amino acids cannot be made by the body and must come from food, whereas nonessential amino acids are produced by the body).
[8] 21 U.S.C. § 321(ff)(2)(C). *See also Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG), 2010 WL 2925955, at *3 n.7 (E.D.N.Y. July 21, 2010) ("whether a product is a dietary supplement or a conventional food will depend on how it is labeled.") (citation omitted); ¶¶ 36, 38 ("Defendant does not label the Product as a dietary supplement" and "Because the Product is a food, it must comply with [§ 172.320]- Special Dietary and Nutritional Additives- Amino Acids").

are not preempted for "attempt[ing] to force CVS to comply with one of two optional labelling schemes." *Id.*

## II.   CVS's Remaining Arguments for Dismissal Fail

### A.   The Product name CVS WHEY PROTEIN POWDER is misleading.

The name CVS WHEY PROTEIN POWDER implies that the Product is simply a whey protein powder, not a "protein-amino acid blend" filled with cheap "spiking" ingredients.[9] As such, the Product name is misleading to reasonable consumers and violates federal regulations. *See* 21 C.F.R. §§ 101.3(b)(3) (food's name must be "appropriately descriptive term"); § 101.18(b) (the name of a food with two or more ingredients may be misleading if it "includes or suggests the name of one or more but not all such ingredients"). Moreover, courts have routinely rejected the argument that required ingredient list disclosures make labels non-misleading as a matter of law. *See, e.g., Williams v. Gerber Products Co.,* 552 F.3d 934, 935-40 (9th Cir. 2008) ("We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations … Reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box."); *Wilson v. Frito-Lay N. Am., Inc.*, No. 12-1586 SC, 2013 WL 1320468, at *13 (N.D. Cal. Apr. 1, 2013) ("Even though the nutrition box could resolve any ambiguity, the Court cannot conclude as a matter of law … that no reasonable consumer would be deceived by [principal display panel]"); *DeAngelis v. Timberpeg E., Inc.*, 51 A.D.3d 1175, 1178 (2008) (it is "not whether [the label] is deceptive to the hypothetical reasonable person, but to

---

[9] While "Vanilla" is arguably also part of the Product name, the statement "Naturally & Artificially Flavored Drink Mix" is not. *See* 21 C.F.R. § 101.3(d) (requiring the statement of identity to be in bold and prominent print, and "in a size reasonably related to the most prominent printed matter on [the principal display panel]."); ¶ 49 (photocopy of principal display panel). Moreover, the statement "Naturally & Artificially Flavored Drink Mix" gives no indication of the spiking ingredients: it only indicates the Product contains added flavors, and that the Product is a "mix" of some sort, without specifying what the Product consists of besides whey protein and added flavoring ingredients. ¶ 60.

the ignorant, the unthinking and the credulous who, in making purchases, do not stop to analyze but are governed by appearances and general impressions.").[10]

### B. CVS was required to disclose the Asparagine and Hydroxyproline.

It is no defense that "partially hydrolyzed whey protein" includes the undisclosed ingredients Asparagine and Hydroxyproline, which in any event is a premature factual issue. *See* 21 U.S.C. § 343(i)(2) (the label for a food that is "fabricated from two or more ingredients" must bear the "common or usual name of *each such ingredient*") (emphasis added); 21 C.F.R. §§ 101.4(b)(2)(i)-(ii) ("An ingredient which itself contains two or more ingredients and which has an established common or usual name … shall be designated in the statement of ingredients on the label of such food by either of the following alternatives: (i) By declaring the established common or usual name of the ingredient followed by a *parenthetical listing of all ingredients contained therein* in descending order of predominance[;] (ii) By incorporating into the statement of ingredients in descending order of predominance in the finished food, *the common or usual name of every component of the ingredient* without listing the ingredient itself.") (emphasis added).

### C. The existence of a contract between Plaintiff and CVS does not affect Plaintiff's ICFA and unjust enrichment claims.

Plaintiff has stated a viable ICFA claim, yet Defendant urges the Court to dismiss the ICFA count because "[t]his is merely a breach of contract count cloaked as a violation of the Consumer Fraud Act." Of course, consumer fraud actions almost always involve a transaction that constitutes a contract. *See* Black's Law Dictionary (10th ed. 2014) (defining consumer fraud as a "deceptive act or practice … made by a seller or advertiser of goods or services to induce a person or people in

---

[10] CVS's complaints about inconsistent pleading, *see* Motion at 3 n.3, are misplaced, as a food may be illegally misbranded and actionable because its label violates specific regulations dictating how a food is to be labeled (making the label *by definition* false or misleading), *or* because its label violates the "catch-all" provision prohibiting labeling that is false or misleading to a reasonable consumer, who "do[es] not stop to analyze [the label] but [is] governed by appearances and general impressions." *Deangelis*, 51 A.D.3d at 1178.

general to buy."). Indeed, the appropriate inquiry is not whether or not a contract was formed between the consumer and the merchant, but whether the alleged conduct "implicates consumer protection concerns." *See Lake Cnty. Grading Co. of Libertyville v. Advance Mech. Contractors, Inc.*, 275 Ill. App. 3d 452, 459 (1995); *Empire Home Servs., Inc. v. Carpet Am., Inc.*, 274 Ill. App. 3d 666, 669 (1995); *Song v. PIL, L.L.C.*, 640 F. Supp. 2d 1011, 1017-18 (N.D. Ill. 2009). This action does not involve a private contract dispute between business entities having no effect on the public interest: the very purpose of the federal labeling requirements CVS is alleged to have violated is to prohibit commerce in misbranded articles and to inform and protect the ultimate consumer. *United States v. Kocmond*, 200 F.2d 370, 374 (7th Cir. 1952). Plaintiff has stated an ICFA claim.

Unjust enrichment may be asserted as a separate cause of action, because CVS violated its non-contractual duty to refrain from introducing misbranded food into interstate commerce and refrain from deceptively marketing the Product, and CVS benefited from such deception. *See Martis v. Grinnell Mut. Reinsurance Co.*, 388 Ill. App. 3d 1017, 1024-25 (2009) (providing "[f]or a cause of action based on a theory of unjust enrichment to exist, there must be an independent basis that establishes a duty on the part of the defendant to act and the defendant must have failed to abide by that duty."). Plaintiff may proceed under alternative theories of recovery, including unjust enrichment and breach of express warranty, at this stage of the litigation. Fed. R. Civ. P. 8(a). *See also In re Innovatio IP Ventures, LLC Patent Litig.*, 921 F. Supp. 2d 903, 924 (N.D. Ill. 2013) (providing the same); *Sharbaugh v. First Am. Title Ins. Co.*, No. 07 C 2628, 2007 WL 3307019, at *2 (N.D. Ill. Nov. 2, 2007) (providing the same). Neither claim should be dismissed.

### D. The Complaint states a breach of express warranty claim.

The Complaint includes photocopies of the Label and alleges that the terms of the contract include the representations of fact made by CVS on the Label, and this by itself is sufficient to state the breach claim. *Indus. Hard Chrome. Ltd. v. Hetran, Inc.*, 64 F. Supp. 2d 741, 744 (N.D. Ill. 1999)

("To satisfy these elements [of a breach of express warranty claim], it is sufficient for plaintiffs to attach the express warranty to the complaint."). Moreover, given the Complaint's allegations, the Court can easily infer that Plaintiff sought to purchase a whey protein powder supplement and based his purchase on the representations made on the Label. *Id.* at 747 ("the complaint must include either direct or inferential allegations with respect to all material elements of the claims asserted."). This claim should not be dismissed.[11]

### III.   The Action Should Not Be Stayed Pursuant to the Primary Jurisdiction Doctrine

The primary jurisdiction doctrine "allows a federal court to refer a matter extending beyond the 'conventional experiences of judges' or 'falling within the realm of administrative discretion' to an administrative agency with more specialized experience, expertise, and insight." *In re StarNet, Inc.*, 355 F.3d 634, 639 (7th Cir. 2004) (citation omitted). The doctrine "should be invoked sparingly since it often results in added expense and delay to the litigants … [it] is not designed to 'secure expert advice' from agencies 'every time a court is presented with an issue conceivably within the agency's ambit.'" *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 97-98 (N.D. Ill. 2013) (citation omitted). "The doctrine should only be invoked 'if a claim requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency[.]'" *Id.* at 98 (citation omitted). *See also Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG), 2010 WL 2925955, at *14 (E.D.N.Y. July 21, 2010) ("deferral to the FDA is unlikely to result in a timely resolution of plaintiffs' claims. The FDCA does not provide a private right of action, and there is no reason to believe the plaintiffs could obtain a timely determination from the FDA concerning the merits of their claims.").

---

[11] The Court dismissed the breach of express warranty count in Plaintiff's previous complaint on "puffing" grounds, but as amended, the Complaint alleges that the Product does not provide 26 grams of protein per serving, "high quality" or otherwise. Further, CVS's failure to state a claim argument based on the protein in the product being Class II nutrient lacks merit, as explained above.

Plaintiff's claims do not involve a "technical question": Plaintiff alleges clear-cut violations of the federal laws that protect consumers from deceptive labeling. CVS's suggestion that a stay would somehow serve regulatory consistency does not bear out, as "there is no label element Plaintiff challenges that FDA regulation or policy does not address." *Bruton v. Gerber Products Co.*, 961 F. Supp. 2d 1062, 1085 (N.D. Cal. 2013). It would be contrary to the doctrine's purpose to stay this case because it is possible that the FDA will issue a final rule in several years that incorporates AHPA recommendations. *See* Comments of the American Herbal Products Association on Proposed Rule on Food Labeling: Revision of the Nutrition and Supplement Facts Labels, Docket No. FDA-2012-N-1210, at 3 n.3 (Aug. 1, 2014), *available at* http://www.ahpa.org/Portals/0/pdfs/AHPA_Comments_Proposed_Nutrition_Labeling.pdf. (recognizing "it may be several more years before the revised Nutrition Labeling Rule goes into effect"). The action should not be stayed.

## CONCLUSION

Plaintiff respectfully requests that the Court deny CVS's Motion to Dismiss.


Dated: September 28, 2015                    Respectfully submitted,

                                             **THE MILLER LAW FIRM, P.C.**

                                             /s/ Sharon S. Almonrode
                                             Sharon S. Almonrode
                                             THE MILLER LAW FIRM, P.C.
                                             950 West University Drive, Suite 300
                                             Rochester, MI 48307
                                             Ph: (248) 841-2200
                                             Fax: (248) 652-2852
                                             ssa@millerlawpc.com
                                             *Attorneys for Plaintiff and the Putative Class*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DEREK GUBALA, individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) | Case No. 14-cv-9039 |
| Plaintiff, | ) | |
| | ) | Judge Thomas M. Durkin |
| v. | ) | |
| | ) | Magistrate Judge Daniel G. Martin |
| CVS PHARMACY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on September 28, 2015, I electronically filed the foregoing documents using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

**The Miller Law Firm, P.C.**

/s/ *Sharon S. Almonrode*
Sharon S. Almonrode (P33938)
950 W. University Dr., Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
ssa@millerlawpc.com